NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TONYA MILLER,**

      **Plaintiff,**

**v.**                                  **Case No. 6:17-cv-1777-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Tonya Miller, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 17, 19, and the parties' Joint Memorandum, Doc. No. 23.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 20. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2009, Miller filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Program ("OASDI"), 42 U.S.C. § 401, *et seq.*, and the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* She alleged that she became disabled on June 1, 2009.  R. 177, 179.

After her applications were denied originally, on reconsideration, by an Administrative Law Judge ("ALJ") and by the Appeals Council, Miller appealed the Commissioner's final decision to the United States District Court for the Northern District of Florida.  The Honorable Maurice M. Paul, United States District Judge, reversed the Commissioner's final decision, finding that the ALJ did not explain his decision to reject Miller's treating physicians' findings that her HIV status and anti-HIV medications caused her to be too fatigued to perform full-time work.  R. 1188-94.  Judge Paul remanded the case with instructions "to consider and explain with specificity the weight given to the opinions of the treating physicians concerning plaintiff's fatigue, taking into account the side effects of plaintiff's medications."  R. 1194.

On remand, the ALJ held another hearing.  Miller, represented by an attorney, a vocational expert ("VE") and two medical experts testified at the hearing.  R. 1102-51.  During the hearing, counsel for Miller amended Miller's disability onset date to January 1, 2011.  R. 1143-44, 1410.

After considering the new hearing testimony and the evidence in the record, the ALJ issued another decision.  R. 1047-62.  The ALJ found that Miller was insured under OASDI through December 31, 2014.  R. 1049.  The ALJ determined that Miller had not engaged in substantial gainful activity since the original disability onset date, June 1, 2009.  *Id.*

NOT FOR PUBLICATION

The ALJ found that Miller had the following severe impairments: history of human immunodeficiency virus ("HIV"); history of asthma; obesity; and history of seizures. R. 1050. He concluded that Miller did not have any severe mental impairments. R. 1051. The ALJ found that Miller did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 1052.

The ALJ found that Miller had the residual functional capacity ("RFC") to perform sedentary work, as follows:

> [T]he claimant can lift/carry up to 5 to 10 pounds frequently and no more than 10 to 20 pounds occasionally; stand/walk up to 3 hours total in an 8-hour workday; sit up to 6 hours total in an 8-hour workday; the claimant can reach from the waist to above; can frequently handle, finger, feel; occasional climbing ramps/stairs; never climb ladders, ropes, or scaffolds; occasional kneeling; no limitation on stooping or crouching; the claimant must avoid extreme cold and heat, atmospheric dusts, and fumes, and extreme temperatures.

R. 1052. In making this determination, the ALJ gave no weight to the opinions of three of Miller's treating physicians: John D. Colon, M.D.[2] and Ernesto J. Lamadrid, M.D., both of whom were affiliated with the Alachua County Health Department, and Robert M. Ashley, M.D., a general practice physician. R. 1057-58. The ALJ found that Miller's severe impairments could reasonably be expected to cause her alleged symptoms, but that her allegations concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. R. 1053.

The ALJ found that Miller could not perform her past work as a Fast Food Manager; Fast Food Cook; Housekeeping Cleaner; or Cafeteria Attendant. R. 1060. After considering the testimony of the VE, the ALJ concluded that Miller could perform sedentary work available in the

---

[2] The ALJ erroneously referred to Dr. Colon as Dr. Collins. R. 1057.

NOT FOR PUBLICATION

national economy, specifically Ticket Taker; Storage Rental Clerk; and Addresser. R. 1061. Therefore, the ALJ concluded that Miller was not disabled. *Id.*

Miller did not file exceptions to this decision with the Appeals Council. Because she moved to the Middle District of Florida during the administrative proceedings, R. 1073, she asks this Court to reverse the final decision of the Commissioner and remand the case with a direction that benefits be paid to her.

## JURISDICTION AND STANDARD OF REVIEW.

Miller having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

The parties did not detail the medical evidence in the Joint Memorandum, instead only summarizing the opinions of Miller's treating physicians Drs. Colon, Lamadrid and Ashley. Doc. No. 23, at 3–5. I have thoroughly reviewed the record. I will summarize only the record evidence relevant to the issues raised to protect Miller's privacy to the extent possible.

Miller was born in 1973. R. 1110. She completed high school. R. 41. She stopped working in June 2009, but she received unemployment benefits through 2011. R. 34, 37-38, 1109.

On December 21, 2011, during the hearing before remand, Miller testified that she was fired from her last employer because she was sick with bad diarrhea, migraines and fatigue and missed

too much work.  R. 34-35.  The side effects of her medication included vomiting and being tired. R. 47.  She suffered from seizures, and she had headaches approximately three times a week.  R. 42, 50.  She did not always seek treatment for seizures.  R. 42.  Some seizures occurred in her sleep, and she was "pretty much back to normal" the next morning except for soreness and fatigue. *Id.*  She described her fatigue as both sleepiness and as a physical limitation.  R. 45.  She attributed her fatigue to the after-effect of a seizure and to HIV.  R. 42-43.  She was sad all the time.  R. 45.

Alvin Stein, M.D., testified at the hearing after remand as one of the medical experts.  R. 1112-34.[3]  He is board certified in internal medicine with a subspecialty in medical oncology.  R. 1834-36.  Based on the review of the file, Dr. Stein summarized Miller's medical history.  He noted that her major complaint from the earliest of the files were headaches.  Miller was also HIV positive, but she had no complications from HIV and she had been in remission for years.  R. 1113, 1125-26.  Miller had a history of seizures, but no seizures were reflected in recent treatment records.  R. 1115.  As for fatigue, Dr. Stein testified that was not caused by HIV because the disease was not an active illness.  R. 1130.  He noted that it could be caused by medication, but that her complaints of fatigue preexisted some of her current medication.  R. 1116.  He opined that Dr. Colon, Dr. Lamadrid and Dr. Ashley relied on Miller's subjective reports of fatigue.  R. 1116-18.

Medical records support Dr. Stein's testimony.  As for her HIV, a treatment note dated June 25, 2009, reflects that Miller was HIV positive with a CD4 absolute count of 289 and a viral load

---

[3] Ann Monis, Psy.D., a psychologist, also testified as a medical expert about Miller's mental impairments after review of the records.  R. 1134-39, 1739.  I do not summarize that testimony because it is not relevant to the single issue raised in the Joint Memorandum.

NOT FOR PUBLICATION

of 9,000.  R. 714.  She was prescribed three medications:  Truvada; Reyataz; and Norvir.  *Id.*  A lab report dated March 16, 2010, reflects that HIV-1 RNA was < 48, and another report on March 23, 2010 reflects that HIV-1 RNA was not detected.  R. 676, 678.  As of March 23, 2011, Miller's TCell/CD4 count was 967[4] with an undetectable Viral Load.  R. 826.  A January 30, 2012 treatment note states that Miller's HIV was "virologically suppressed and immunologically controlled."  R. 1534.  A laboratory report reflects that Miller's HIV-1 Viral Load was < 40 on February 17, 2015.  R. 1768.  On October 6, 2015, and in February, March and July 2016, the laboratory did not detect any HIV-1 Viral Load.  R. 1771-73, 1819.  On November 17, 2016, Miller's HIV-1 Viral Load was < 40.  R. 1774.

Dr. Ashley was Miller's primary care physician.  R. 33, 46.  On December 3, 2007, Miller told Dr. Ashley that she had a seizure over the weekend.  R. 396.  As of March 29, 2009, her seizure disorder was stable on Depakote.  R. 321.  On July 15, 2009, Miller reported that she had experienced one brief seizure-like episode that was not severe.  R. 361.  On February 5, 2010, a treatment note reflects a generalized epileptic seizure associated with sub-therapeutic anticonvulsant levels.  R. 579.  In a Treating Source Seizure Questionnaire dated March 9, 2010, a physician whose signature is illegible wrote that Miller was not compliant with her prescribed treatment and that her medication levels were not therapeutic.  R. 624-25.  On April 27, 2010, Miller told Dr. Ashley that she had experienced seizures and that she had recovered from the most recent episode spontaneously and did not seek treatment.  R. 657.  On April 19, 2011, Miller told Dr. Ashley that she had not experienced any recent seizures.  R. 1577.  On November 29, 2011,

---

[4] "A normal range for CD4 cells is about 500-1,500."  U.S. Dep't of Veterans Affairs, *CD4 count (or T-cell count)*, https://www.hiv.va.gov/patient/diagnosis/labs-CD4-count.asp (last visited Sept. 13, 2018).

6

Miller reported having a seizure one month earlier. R. 1584. On October 22, 2013, Miller reported having a "couple of seizures." R. 1676. On April 2016, Miller reported no recent seizures. R. 1745.

As for headaches, Dr. Ashley described the condition as a tension-type headache. *E.g.*, R. 362, 609, 1752. Miller stated that her headaches had improved with medication. R. 361-62. On April 19, 2011, Miller told Dr. Ashley that she continued to have headaches but that she could continue activities with medication. R. 1577. A treatment note dated June 26, 2012, also reflects that Miller's headaches were relieved with medication. R. 1594. In 2016, Miller reported moderate to severe headaches but noted that medication allowed her to do more of her usual activities of daily life. R. 1745.

Treatment notes contain few complaints of fatigue. On December 3, 2007, Miller complained of fatigue, R. 397, but treatment notes through 2010 do not appear to reflect that Miller complained of fatigue, *e.g.*, R. 649-59, 684-87. On February 26, 2011, Miller stated that medication relieved her headaches but made her drowsy and that she experienced early fatigue throughout the day. R. 1570. However, on January 13, 2012, Dr. Ashley's treatment note reflects that Miller denied sleepiness and drowsiness as side effects of medication. R. 1588. On January 30, 2012, Miller reported that she was "[d]oing well on meds and denie[d] any side effects." R. 1534. On February 29, 2012, a clinic treatment note reflects that Miller denied feeling fatigued, tired or sluggish. R. 1523. On October 2, 2012, Miller denied difficulty with medication and indicated that her medication allowed her to continue her daily activities. R. 1601. On January 30, 2013, Miller complained of fatigue but denied side effects of medication. R. 1534. In July

2013, Miller denied drowsiness with medication. R. 1628, 1680. On December 16, 2013, Miller stated that she had not had difficulty with excessive sleepiness with her medications. R. 1670.

Drs. Colon, Lamadrid and Ashley each expressed opinions about Miller's functional capacity. On September 15, 2010, Dr. Colon completed a Multiple Impairment Questionnaire. His diagnoses of Miller's condition were high blood pressure ("HTN"), HIV positive, depression and seizures. Her symptoms were face rash, fatigue, loss of appetite, lack of motivation, and on and off confusion. He rated Miller's fatigue as severe, at a nine out of ten on a ten-point severity scale. He opined that Miller could sit for two hours and stand/walk for two hours in an eight-hour day. She would need to change positions every hour. She could frequently lift/carry up to ten pounds and occasionally lift/carry up to twenty pounds. Her fatigue or other symptoms were constantly severe enough to interfere with attention and concentration. She would be incapable of even "low stress" work due to depression. R. 783-90.

Dr. Lamadrid prepared an AIDS/HIV Impairment Questionnaire on June 1, 2011. He wrote that he had treated Miller every three months from February 2002 through September 15, 2010. He opined that Miller could sit up to two hours and stand/walk up to two hours in an eight-hour day. She could frequently lift/carry up to ten pounds and occasionally lift/carry up to twenty pounds. He indicated that Miller would frequently experience pain, fatigue or other symptoms severe enough to interfere with attention and concentration. She would be incapable of even "low stress" work. She would likely be absent from work more than three times a month as a result of impairments or treatment. R. 802-08.

Dr. Ashley wrote a letter dated February 20, 2011, in which he reviewed his treatment of Miller for twenty years as her primary care physician. He indicated that the medications for HIV

and seizures include side effects of fatigue. He opined that Miller would likely continue to have limitations that prevent her from working. R. 791-92. Dr. Ashley also completed a Multiple Impairment Questionnaire on the same date. Among other things, he opined that Miller had fatigue and drowsiness with medications. He rated Miller's fatigue at eight out of ten on a ten-point scale. He opined that Miller could sit up to one hour and stand/walk up to one hour in an eight-hour day. She could occasionally lift up to ten pounds. She would frequently experience pain, fatigue or other symptoms severe enough to interfere with attention and concentration. She could not perform even "low stress" jobs. R. 794-801.

On July 29, 2012, Dr. Ashley completed another Multiple Impairment Questionnaire. He indicated that Miller's HIV, seizure disorder and migraine headaches were stable. He did not rate Miller's level of fatigue, but he indicated that Miller's pain, fatigue or other symptoms would frequently be severe enough to interfere with attention and concentration. He wrote that Depakote caused drowsiness and that Truvada caused tiredness and other side effects. R. 1439-46. On December 12, 2012, Dr. Ashley wrote a letter in which he opined that Miller was totally disabled with a chronic medical condition, a history of associated seizure disorder and because effective medication limited her capacity. R. 1022.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Miller asserts only one assignment of error. She contends that the ALJ erred by failing to give great weight to the functional capacity assessments prepared by Drs. Colon, Lamadrid and Ashley, which support a finding that Miller could not work eight hours a day, five days a week. She asks that the Court reverse the final

9

decision of the Commissioner and remand the case with directions to pay her benefits. Doc. No. 23, at 11–14, 19–20. This is the only issue I will address.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when . . . (1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41 (citing *Lewis*, 125 F.3d at 1440)

Although there are few treatment notes from Dr. Lamadrid in the record[5], it appears that Drs. Colon, Lamadrid and Ashley were each treating physicians. The ALJ gave no weight to the functional capacity assessments of these treatment providers, finding that they were inconsistent with the record evidence. Substantial evidence supports the ALJ's conclusion.

Drs. Colon and Lamadrid cited Miller's HIV condition as support for their respective functional capacity assessments. R. 789, 802. The ALJ correctly relied on evidence that Miller's HIV condition was in remission as of the amended disability onset date and, as Dr. Stein testified, it had been in remission for years. Clinical examinations were also benign.

Drs. Colon and Lamadrid also opined that Miller's limitations arose from seizures and depression. R. 788-89. The ALJ correctly observed that there is little evidence of seizures after the amended disability onset date. R. 1054. As discussed above, medical records reflect only

---

[5] In the AIDS/HIV Impairment Questionnaire, Dr. Lamadrid stated that he had last examined Miller on September 15, 2010, months before the amended disability onset date of January 1, 2011. R. 802.

three reported seizures after January 1, 2011. R. 1584, 1676. Moreover, in the Joint Memorandum, Miller does not contest the ALJ's conclusion that she does not have a severe mental impairment and, therefore, her depression does not support the significant functional limitations identified by Dr. Colon and Dr. Lamadrid.

Dr. Ashley's opinions are largely based on his opinion that side effects of Miller's HIV and seizure medication caused disabling fatigue. The ALJ noted that there are no clinical observations supporting the conclusions that Miller's fatigue would prevent her from working. R. 1057. Dr. Stein's testimony supports this conclusion. The record also supports this conclusion because Dr. Ashley's treatment records do not contain any statements that he observed Miller to be fatigued, instead only reflecting Miller's subjective reports of fatigue. Finally, the treatment notes do not support a finding that Miller consistently complained of fatigue. After the amended disability onset date, Miller occasionally reported fatigue, R. 1534, 1570, but more often she denied any side effects from medication, including drowsiness or fatigue, R. 1523, 1588, 1628, 1670. On October 2, 2012, Miller denied difficulty with medication and indicated that her medication allowed her to continue her daily activities. R. 1601.

Therefore, I recommend that the Court find that the ALJ stated good cause for not giving great weight to the functional capacity opinions provided by Dr. Colon, Dr. Lamadrid and Dr. Ashley.

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk

NOT FOR PUBLICATION

of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

### Notice to the Parties.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Respectfully Recommended** this 5th day of October 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE